## ERASMUS HOLBROOK *et al. versus* SIMEON BURT *et al.*

In an action upon a bond given by a vendee for the payment of the purchase money, it was *held*, that evidence of oral representations made by the vendor previously to the execution of the written contract of sale, was admissible for the purpose of proving fraud on his part, although it would be inadmissible to prove a warranty

In such case, evidence that fraudulent representations were made by the vendor, would be immaterial, unless it appeared that the vendee relied on them. But the presumption would be, in the absence of evidence to the contrary, that the vendee did rely on such representations.

In an action brought for the benefit of the assignee of a bond, in the name of the obligee, the obligor is entitled to set up in defence, that the bond was obtained by fraud on the part of the obligee. But if, in such case, it be proved, that the bond was assigned with the assent of the obligors, and that they knew at the time of the assignment, that the bond had been obtained from them by fraud, and did not communicate their knowledge to the assignee, that would preclude them from setting up the fraud of the obligee, to defeat the action.

Where a sale of land is effected by means of fraudulent representations on the part of the vendor, at a price exceeding its real value, and simultaneously with the conveyance of the land to the vendee it is mortgaged back by him to secure the payment of the purchase money, the vendee may rescind the sale notwithstanding the equity of redemption is under attachment by his creditors, for the vendor is substantially in the same condition in which he was before the conveyance.

The question whether the sale is rescinded within a reasonable time is a question of law, where the facts are not in dispute.

If a sale of land in relation to which a contract of guaranty exists, is effected by means of fraudulent representations, on the part of the vendor, in relation to the subject matter of the guaranty, the vendee is not obliged to resort for a remedy to the contract of guaranty, if it was not made between the same parties as the sale, but may rescind the sale.

DEBT upon a bond, dated June 15th, 1835, given by the defendants to the plaintiffs, and assigned, in December, 1836, to Amos Davis, for whose benefit the action was brought.

The trial was before *Shaw* C. J.

The defendants alleged that the bond was obtained from them by means of fraudulent representations ; and in support of this defence, they offered the testimony of Levi A. Dowley, by which it appeared, that on the 23d of May, 1835, the plaintiffs and Thomas Wentworth had an interview with the defendant Burt, Francis T. Merrick and the witness, relative to the sale of a township of land in Maine, at which interview certain representations as to the quantity and quality of the timber on the land, were made both by the plaintiffs and by Wentworth ; and

that an indenture was thereupon executed by Wheelock, one of the plaintiffs, and Wentworth, of the first part, and Burt and Dowley of the second part.

It appeared, that by this indenture, Wheelock and Wentworth agreed to sell two thirds of the township in question, to Burt, Merrick and Dowley, to make over to them two thirds of a contract, then in force, with Asa Babcock & Co. for the stumpage upon the west half of the township, and to guaranty to them, that the township contained eighty million feet of good pine and three good navigable streams ; and Burt and Dowley agreed to pay therefor, at the rate of six dollars per acre, by instalments, in cash and notes, and to give a mortgage upon the premises as security for the payment of the notes.

The plaintiffs objected to the competency of any evidence of oral declarations made by them or by Wentworth, before the execution of the indenture, in relation to the subjects embraced therein, because all such representations were superseded thereby ; and, also, to the admissibility of any declarations made after such contract was entered into, because it was not competent to vary its terms or control its effect by parol testimony.

The judge admitted the parol evidence, it being offered for the purpose of proving fraud and establishing the fact, that the execution of the indenture formed a part of a plan of deception by which the defendants were led to enter into a contract hereafter mentioned.

It was then testified, that the plaintiffs and Wentworth represented, among other things, that there were more than one hundred millions of feet of good sound pine on the township.

It appeared, tnat on the 10th of June, 1835, after the contract was executed, and before any exploration of the township was made, Dowley, for himself and as agent of Merrick, assigned and released to Wentworth all their title and interest in such contract, being one undivided half of all the benefits secured thereby to the parties of the second part, and was himself discharged by Wentworth from the same.

On the 3d of July, 1835, after an examination had been made of the township by persons employed for that purpose, Burt and his partner, Billings, became the purchasers of one

undivided third part of the township, and took a deed of the same from the plaintiffs. The bond in suit was given as part of the consideration for the conveyance. At the same time Burt & Billings executed a mortgage to the plaintiffs of the same land, to secure the performance of the condition of the bond and the payment of sundry notes given for the purchase money.

The defendants offered evidence to show, that the quantity of timber upon the township was much less than that guaran tied in the indenture, and inferior in quality. The plaintiffs contended, that the defendants having accepted the guaranty, and having a complete remedy thereon, it was not competent for them, in this action, to avoid the contract altogether on the ground of fraud. The judge overruled the objection and admitted the evidence It appeared also, that after the purchase by Burt & Billings, the contract with Babcock & Co., mentioned in the indenture, was given up and cancelled by Wheelock, acting for Burt, Billings, Davis, Holbrook, &c. ; that during the winters of 1835 and 1836, and 1836 and 1837, large quantities of lumber were cut and sold from the township, partly under the contract with Babcock & Co., and partly under permits given by the plaintiff Holbrook, acting for the other owners ; and that the proceeds of such sales had been applied in part satisfaction of the bond in suit.

It also appeared, that, in 1838, two actions, one in favor of Lambert & Slade of Boston, and the other in favor of Robinson & Plumer of Boston, were commenced in Maine against Burt & Billings ; and that their interest in the township in question, was attached in such actions ; and there was no evidence, that either of the attachments had been dissolved. By a specification of the claims upon which these actions were founded, it appeared, that they consisted of notes given originally by Burt & Billings, upon the purchase of the township, in part payment of the price, and indorsed to Lambert & Slade, and Robinson & Plumer.

During the trial a writing was produced, purporting to be a deed of release of the premises, from the defendants to the plaintiffs, which was handed by the counsel of the defendants to the counsel for the plaintiffs in November, 1838 ; and this

writing, together with a new deed of release from the defendants to the plaintiffs, was filed in the case before the trial was finished.

The plaintiffs contended, that the defendants could not resist the claim of the plaintiffs on the ground of fraud, unless they rescinded the original contract ; that they had not done this in a reasonable time after the supposed fraud was discovered, which was as early as the 1st of July, 1836, when Lombard, a witness, who had been employed to scale and ascertain the quantity of lumber on the township, reported to the defendants that there were only six millions of feet on the west half of the township ; and, therefore, that the defendants were not now at liberty to rescind the contract ; that if they could have rescinded as against the plaintiffs, they could not as against Davis, the equitable assignee of the bond, who, in December, 1836, acquired the same for a valuable consideration, and had, upon the faith of payments made before and after that time by the defendants, foregone benefits, by delay and otherwise, whereby his circumstances, as the real party in interest, had been materially changed.

It was admitted, that no notice of a defence to this action was given by the defendants until after it had been pending in court from December, 1836, to March, 1838 ; and it was contended, that for this reason, also, the defendants ought not to be permitted now to rescind the contract, to the injury of the assignee ; that it was not competent for the defendants to rescind it, unless they could restore the other parties to their original condition ; and that they could not do this, because they had occupied the land for nearly four years, had enjoyed the benefits of the contract with Babcock & Co., and had cut or permitted to be cut large quantities of lumber on the land, and because the land was now under attachment to secure the payment of the defendants' debts.

The judge instructed the jury, that the rights of Davis, the assignee, were, in all respects, the same as if this action had been commenced and prosecuted by the obligees and they were the holders of the bond ; that the defendants might set up any defence, as against him, which they could have done against the obligees themselves, with this exception and limita-

tion, that they could not avail themselves of any payment made to the nominal plaintiffs, or any release made, or other act done by them after notice of the assignment of the bond ; that inasmuch as the defendants were possessed only of an equity of redemption, the plaintiffs would be restored to their estate by the execution of a release by the defendants, and would be in as of their former estate ; that their title would take precedence of any attachment which could be made on the equity of redemption as the property of Burt & Billings ; that the attachments of Lambert & Slade and Robinson & Plumer would not, therefore, operate as a charge upon the estate, as against the plaintiffs or their assignee, and could not be relied on as preventing the defendants from rescinding their contract, if, in other respects, they had a right so to do ; and that if those actions were brought to recover the amount of notes given for the original conveyance, if that was fraudulent, the plaintiffs could not set up the attachments as an objection to rescinding the contract, as they would themselves be liable for the amount of the notes to the holders.

The judge further instructed the jury, that the offer of the defendants to release was, under all the circumstances, made within a reasonable time ; that as the plaintiffs had a right to enter upon the estate at any time under their mortgage, they could not suffer by the delay ; that if the plaintiffs gave, and the defendants accepted, the deed in this case as a full execution and performance of the preliminary contract, the guaranty therein, as such, ceased to be in force as a contract, and, after that, neither party had any remedy thereon by action ; but that if, in other respects, the guaranty would afford the parties to it an adequate remedy, it would be no bar to the defence of fraud in this case, because the parties were different, the contract being between Wentworth and Wheelock, on the one side, and Burt and Dowley on the other, and the deed being between Holbrook and Wheelock, on the one side, and Burt & Billings on the other, and because the subject matter, also, was different, the contract being for two thirds of the township, and the deed for one third.

The jury returned a verdict for the defendants.

The plaintiffs excepted to the ruling and directions of the judge.

*Merrick* and *Washburn*, for the plaintiffs. If fraudulent representations were made by the nominal plaintiffs, still the defendants cannot avail themselves of them as against Davis, the assignee, they having assented to the assignment impliedly, by not objecting to it in a reasonable time after they had notice of the alleged fraud. 2 Story on Eq. § 1039 ; Roscoe on Evid. 25, 26 ; 2 Stark. Evid. 29, 38. The assignee is regarded as the real party, both in equity and at law, although the action be brought in the name of the assignor. 2 Story on Eq. § 1057 ; *Legh* v. *Legh,* 1 Bos. & Pull. 447.

The instructions as to the right of rescinding, were incorrect. The defendants cannot rescind, because they cannot restore the plaintiffs to their original condition. The attachments were a lien on the estate, and were not affected by the release of the land by the defendants to the plaintiffs. If the land should become of more value than the amount due on the mortgage, the attaching creditors might redeem the land and become the owners thereof by paying off the mortgage. *James* v. *Morey,* 2 Cowen, 246 ; *Hunt* v. *Silk,* 5 East, 449 ; *Conner* v. *Henderson,* 15 Mass. R. 322 ; *Kimball* v. *Cunningham,* 4 Mass. R. 502.

The ruling of the judge, that the offer to release was, under all the circumstances, made within a reasonable time, was incorrect. Although it was competent for the judge to instruct the jury on the subject, yet it should have been referred to the decision of the jury. It was at most a mixed question of law and fact. 1 Stark. Evid. (Am. ed.) 420, 421, 424 ; 2 Stark. Evid. 255, note ; *Parker* v. *Palmer,* 4 Barn. & Ald. 387.

The evidence of representations made by the plaintiffs and Wentworth, before the execution of the indenture, was inadmissible, such representations being all merged in the guaranty, which is still in force. *Pickering* v. *Dowson,* 4 Taunt. 779. If, however, this evidence was admissible, then the jury should have been instructed, that it would be immaterial, unless it should appear to them that the defendants relied on such representations. 1 Stark. Evid. 471.

*J. Davis* and *C. Allen,* for the defendants, to the point, that

Holbrook
v.
Burt.

Oct 22d.

the evidence of the previous declarations of the plaintiffs was admissible, it being offered for the purpose of proving fraud, cited 2 Saund. on 'Pl. and Evid. 528 ; 3 Stark. Evid. 1626, 1627.

WILDE J. drew up the opinion of the Court. Several exceptions were taken to the decisions of the Chief Justice, who presided at the trial of this case, and to his instructions to the jury. These exceptions have been examined by the Court with the careful attention which the importance of the case required, and we are all of opinion that they cannot be sustained.

The first objection made at the trial was to the admission of oral testimony to prove representations made before the written contract. This objection, however, was not much urged at the argument. If the evidence had been offered to prove a warranty, the objection would have been maintainable ; but it was admitted, as tending to prove fraud and deception, and in that aspect it was undoubtedly admissible evidence.

But the plaintiffs' counsel contend, that if this evidence were admissible, the jury should have been instructed, that it would be immaterial, unless they should be of opinion from the evidence, that the defendants relied on the plaintiffs' representations. Instructions to that effect, would undoubtedly have been given, if the Court had been requested to instruct the jury on that point. But a party cannot except to the omission of the Court to instruct the jury on a question of law, unless it be raised at the trial, and the Court be requested to instruct the jury on the question. It does not appear that the law involved in the exception was questioned at the trial ; nor does it appear from the report of the evidence, that any instruction as to the law on this point was required. The presumption undoubtedly is, that the defendants did rely on the representations made, and there was no evidence to rebut this presumption. It is, however, a sufficient answer to the exception, that the Court was not requested to instruct the jury as to the point now made.

Then it was objected by the plaintiffs' counsel, that if the representations were fraudulent and were sufficient to avoid the bond as to the nominal plaintiffs, yet, as the bond had been assigned for a valuable consideration and *bonâ fide* to one Amos

Davis, who is the real plaintiff in interest, the defendants cannot avail themselves of the same defence, as against Davis; nor can they rescind the contract on that ground, because they did not give him seasonable notice of the fraud after they had discovered the same. The instructions to the jury on this point were, " that the rights of Davis, the assignee, in this case, were in all respects the same as if the action had been commenced and prosecuted by the obligees, and they were the holders of the bond, and that the defendants might set up any defence, as against him, which they could have done against the obligees themselves ; with this exception and limitation, that they could not avail themselves of any payment made to the nominal plaintiffs, or any release made, or other act done by them, after notice of the assignment of the bond." And we are of opinion, that there is no foundation for any doubt of the correctness of the law as thus laid down. The assignment of a chose in action, negotiable securities excepted, is not by the common law a valid transfer of the title. But courts of law for a long time have taken notice of such assignments, so far is to allow the assignee to maintain an action in the name of the assignor, and to protect him against any collusion between the debtor and the assignor, or any other fraudulent practices to defeat the action.

But the counsel for the plaintiffs have argued, that such an assignment is valid if assented to by the debtor, and they rely on a passage in Story on Equity, 305. "At law," the learned author remarks, "with the exception of negotiable instruments and some few other securities, this " (that choses in action could not be transferred by assignment) "continues to be the general rule, unless the debtor assents to the transfer ; for if he does, then the right of the assignee is complete at law." This passage is liable to misconstruction ; but the cases cited in support of it show clearly, that it was not intended to assert that the mere assent of the debtor would make an assignment of a chose in action a valid legal transfer, a proposition which cannot be maintained, but that the word " assent " was used in a qualified sense, and is limited to such an assent as would amount to a promise to pay the assignee. The cases cited are mostly of this description, in which the actions were

brought in the names of the assignees, and were founded on the promises to them. And, no doubt, such a promise is valid the assignment being a sufficient consideration therefor. 1 H. Bl. 239 ; 1 Bos. & Pull. 447 ; 14 East, 582 ; 9 Bingh. 372 ; 3 Barn. & Cressw. 842. This question, however, is not material in the present case ; for there is no evidence, that the assignment was made with the assent of the defendants. All that appears is, that they had knowledge of the assignment after it had been made. If it had been proved, that the bond had been assigned with the assent of Burt, the principal defendant, and that he knew it had been obtained from him by fraud and did not communicate his knowledge to the assignee, that, we think, would be a fraudulent concealment on his part, and would preclude him from setting up the fraud of the nominal plaintiffs to defeat the action. But no such assent was proved, nor does it appear that at the time the assignment was made the defendants had any knowledge of the fraud. But the plaintiffs' counsel contend, that when the principal defendant did discover the fraud, he was bound to give notice of it to the assignee ; and that he had unreasonably neglected so to do. The fact relied upon to prove, that the defendants had knowledge of the fraud as early as July, 1836, was, that one Lombard, a witness, was then employed to ascertain the quantity of lumber on the township, and that he reported to the defendants, that there were only six million feet on the west half of the township. But this did not prove, that the deficiency might not be made up from the other half of the township ; and if the defendants had good reason then to believe that there would be a deficiency, still that was no proof that the representations of the plaintiffs were fraudulently made. To establish that fact, the defendants must prove, that the plaintiffs knew or had good reason to believe, that there was a deficiency, when they made the representations. The defendants denied that they had knowledge of the fraud, until long after July, 1836, and some time after this action had been pending ; and there was no proof to the contrary. The defendants therefore had good right to rescind the contract, if the offer of the defendants to reconvey the land would vest in the plaintiffs their original title to the land, so that substantially they would be in

the same situation and condition in which they were before the conveyance.   The right of Burt, the principal defendant, was a mere right of redemption, and it was entirely worthless. The land was mortgaged to the plaintiffs as security for the defendants' notes and securities greatly exceeding the value of the land, so that if the equity of redemption should be sold by the attaching creditors of Burt, it could never avail them to any beneficial purpose, or to any prejudice of the plaintiffs.   For this, as well as for other reasons appearing in the report, we think the defendants had a right to rescind the contract, and that the offer so to do was made within a reasonable time after the fraud was discovered by the defendants.  It is contended by the plaintiffs' counsel, that whether the offer was made within a reasonable time or not, was a question for the jury to decide; and this is unquestionably true, if there was any fact in dispute on that point.   But it does not appear, that there was any fact in dispute material to the question.   The only evidence of the time when the fraud was discovered, was the admission made by the defendants at the trial.   No fact therefore was assumed by the Court ; for the knowledge of the defendants, that there was a deficiency, was no proof of fraud.   There being then no material fact in dispute as to this question, it was for the Court to decide whether the offer to rescind was made within a reasonable time.

The last exception to the instructions to the jury relates to the guaranty of Wheelock and Wentworth, as to the amount of lumber on the township.  The plaintiffs' counsel contended, at the trial, as they do now, that the defendants' only remedy for any deficiency, was on the guaranty.   The jury were instructed, that if the defendants had such a remedy, they might nevertheless rescind the contract with the plaintiffs, on the ground of fraud.   And this instruction also we think correct. If the guaranty had been made by the plaintiffs, the question would be different.   The contract with Wheelock and Wentworth has no connexion with the subsequent contract between the present parties, except that it may perhaps tend to prove, .hat it was made for the purpose of inducing the defendants more readily to credit the plaintiffs' misrepresentations.

*Judgment on the verdict.*